LANDRY, Judge.
This appeal is the sequel to Foster v. Department of Public Welfare, La.App., 144 So.2d 271, certiorari denied November 8, 1962, in which the dismissal of plaintiff, Irma E. Foster, from the permanent classified position of Welfare Visitor, Department of Public Welfare, State of Louisiana, was annulled, reversed, set aside and this cause remanded to the Civil Service Commission, (sometimes herein *517 after referred to simply as the “Commission”), for further proceedings because of the Commission’s affirmation of appellant’s discharge from the aforesaid Civil Service Position notwithstanding the record contained no evidence whatsoever to support the charges specified in the appointing authority’s notice of dismissal. Upon remand, the Commission, after hearing, concluded the charges against plaintiff, employee, were proven, and again affirmed plaintiff’s discharge and from said unfavorable decision plaintiff has taken this present appeal.
Appellant’s discharge was effected by the following notice of removal dated May 30, 1961:
“P.O. Box 4065 Baton Rouge 4, Louisiana
Mrs. Irma Ethel Foster
3411 Audubon Court
New Orleans 25, Louisiana
Dear Mrs. Foster:
You are released from your position as Welfare Visitor with the Department of Public Welfare, effective upon receipt of this letter, for the following reasons:
1. On May 13, 1961, at about 6:20 p. m., you entered the home of Octave Rainey, II, and his wife, Jeanne Rainey, at 9001 Apricot Street, New Orleans, Louisiana, carrying a hatchet and an ice pick concealed in a paper bag.
2. The fourteen-year old son of the Raineys, Octave, III, came into the house and asked you what you wanted. You told him that you wanted to use the bathroom. When Octave, III, turned to show you the bathroom, you struck him on the head with the hatchet. You used the hatchet to damage a piano and other furniture in this house.
3. Octave Rainey, III, was hospitalized later the same day for treatment of the wound inflicted on his head by you.
4. You were arrested later the same day by the City Police and charged with aggravated battery, criminal trespass, and carrying concealed weapons.
Yours truly,
Mary Evelyn Parker
Commissioner of Public Welfare
cc: Mr. W. W. McDougall
Director of Personnel
Department of Civil Service
bcc: Miss Lillie H. Nairne, Director
Orleans Parish
Mrs. Martha N. White
Field Representative”
Predicated upon testimony adduced during the hearing of this matter before the Commission pursuant to the remand ordered by this Court, the Commission reached *518 the following factual determination, to-wit:
“FINDINGS OF FACTS
“Appellant had a satisfactory tenure of continuous employment with the Department of Public Welfare for a period of some 20 years. On May 16, 1961, she was suspended by her employer pending an investigation of charges of aggravated battery and criminal trespassing occurring on May 13, 1961. On the latter date, during the late afternoon, appellant entered a residence at 9001 Apricot Street, New Orleans, and committed a battery with a hatchet on the person of a fourteen-year-old occupant who, thereafter, received hospital treatment for the wound. The victim unequivocally identified appellant as his assailant. For this cause, appellant was removed upon receipt of a letter dated May 30, 1961, which was delivered on June 2, 1961.
“Appellant ¿either admitted nor denied the incident which occurred on a non-work day when appellant was not engaged in activities on behalf of her employer.
“Medical reports filed in evidence by stipulation indicate that appellant may have been suffering from a ‘severe emotional disorder’ on the date of the incident; however, the statements of one physician are so divergent as to be irreconcilable
“The appointing authority produced testimony that, because of the very nature of its business, the continued employment of a person whose conduct is as unpredictable as appellant’s could not be condoned.
“The Commission finds from the evidence that the appointing authority has established that the appellant entered the home of Octave Joseph Rainey, Jr., carrying a hatchet and
an ice pick in a paper bag; that appellant used the hatchet to strike a 14-year-old occupant; that the 14-year-old occupant required medical attention on the date that the wound was inflicted. The Commission also finds that this conduct is sufficient to justify dismissal of the appellant from her position as a Welfare Visitor.”
Learned counsel for appellant assigns numerous errors allegedly committed by the Commission in sustaining plaintiff’s dismissal, which complaints we understand to be essentially as follows: (1) Appellant’s dismissal was illegal and ineffective because she was discharged prior to investigation of the charges lodged against her and without the benefit of a previous hearing. In this regard, we understand learned counsel for appellant further contends the appointing authority is without power to discharge an employee, the authority of dismissal (according to counsel for appellant), being lodged solely in the Commission pursuant to Louisiana Constitution Article 14, Section 15(0) (4), LSA; (2) Her discharge was improperly ratified by the Commission because the letter of dismissal does not specifically state that the conduct listed therein was detrimental to the efficient operation of the public service or in what way it may have affected the efficient operation of the welfare department; (3) The Commission was without authority to consider “off the job” occurrences and events particularly since the letter of dismissal docs not show in what way appellant’s qualifications, performance and efficiency as a welfare visitor are affected by the conduct charged. Regarding this alleged error, it is appellant’s contention she may not be discharged until the issue of her guilt or innocence is decided with respect to the criminal charges contained in the notice of release and, further, that in the event of her acquittal of such charges she may not be discharged for the conduct set forth; (4) The Commission erred in concluding the *519 record contains evidence substantiating and confirming the charges against appellant; and (S) The Commission erred in accepting the uncorroborated testimony of the witness, Octave Rainey, III, as being sub-stantiative of the charges against plaintiff. In this latter regard we understand the position of esteemed counsel for appellant to be that the burden of proof rests upon the Commission.
The contention that appellant’s dismissal was illegal 'and improper because ordered without prior investigation of the charges or hearing afforded appellant is, as we understand it, based on the argument that the power of dismissal vests solely in the Commission pursuant to Louisiana Constitution Article 14, Section IS (O) (4) ; that no appointing authority has the power of discharge and, under the cited constitutional article, dismissal may be ordered by the Commission only after a hearing. The argument is patently without merit. Article 14, Section 15(0) (4), of the Civil Service Constitutional Amendment, clearly has no application to the dismissal of an employee by an appointing authority, for cause. The Article relied upon by astute counsel for appellant applies only to those investigations of alleged violations of the Civil Service Amendment instituted by the Commission on its own initiative pursuant to the investigative power expressly conferred by the Article in question. Where the Commission inaugurates an investigation on its own motion, to determine whether a violation of the Civil Service Amendment has occurred, no disciplinary action may be taken or imposed against an accused civil servant without first affording him full opportunity to be heard and ample occasion to refute the charges lodged against him by the Commission. Section 15(0) (4) so provides in express terms.
We are not, however, in the present case concerned with air investigation insti- ■ tilted by the Commission pursuant to the cited constitutional article but rather the discharge of an employee by her appointing authority. The power, to dismiss án employee for cause is expressly given all appointing authorities by the provisions-of Constitutional Article 14, Section 15 (N) (1) which states, in essence, that no employee may be suspended, demoted, dismissed or in any way discriminated against, except for cause, expressed in writing by the appointing authority. .It is on the authority of Section (N) (1) that plaintiff’s dismissal was ordered. As correctly pointed out by counsel for the Commission, the Commission is vested with authority to make rules and regulations governing employment, transfers, removal and demotion by virtue of Constitutional Article 14, Section 15 (I), in conformity with which the Commission has adopted Rules 13.10, 13.11 and 13.20 which establish the procedure for the appeal guaranteed classified employees under Section 15, subsections (O) (1), and (O) (2), of the Civil Service Amendment. It seems clear beyond all doubt an appointing authority may dismiss, discharge or impose other disciplinary action upon a classified employee for cause expressed in writing before a hearing afforded the employee. If the employee is aggrieved thereby, either because the disciplinary action is without cause or fails to comply with a rule of the Commission, appeal therefrom may be had to the Commission as provided for in Section 15(0) (1) and (O) (2), which is what appellant has done in the case at bar. We detect nothing in 15(N) (1) which requires the appointing authority to hold a hearing before imposing disciplinary action upon a civil servant.
The contention plaintiff was discriminated against because the notice of dismissal failed to specify wherein the conduct complained of rendered her continued employment detrimental to the efficient operation of the welfare service is also without merit. The notice given appellant complies with Section 15(N) (1) and Rule XX, Section 3, of the Commission’s rules which merely state such notice must be in writing *520 and give in detail the reasons for such action, neither of which requires the express narration that the conduct complained of is detrimental to the efficient operation of the service or the manner in which the rep-robated conduct might adversely affect the operation of the department involved. Moreover, such a finding would be a mere conclusion rather than a determination of specific fact and, as such, a matter to be considered by the Commission in the exercise of its appellate jurisdiction and ultimately by the Court on appeal from the ruling of the Commission. Granting that Brickman v. New Orleans Aviation Board, 236 La. 143, 107 So.2d 422, and other authorities cited and relied upon by counsel for appellant establish the rule of strict construction concerning specification of charges against the employee and conceding further that, to sustain disciplinary action, there must be a real and substantial relation between the assigned cause of an employee’s dismissal and his qualification for the position in which he served, said authorities do not sustain the contention the relationship between the assigned cause and the employee’s qualifications must be set forth in detail in the notice of dismissal. It suffices if such relationship does exist and whether it does or not is a conclusion to be reached after consideration of the facts in each individual case. We hold, therefore, that failure of the dismissal notice to set forth in detail the manner in which appellant’s alleged misconduct rendered her further employment detrimental to the efficient operation of the service, is a matter of no moment considering the conclusions hereinafter set forth.
Appellant’s contention the appointing authority has no power to impose disciplinary action for “off the job conduct of the employee” is predicated upon the record which establishes that the assault which led to appellant’s dismissal is shown to have occurred at approximately four o’clock P. M., Saturday, May 13, 1961, at which time appellant admittedly was not on duty. It now appears well settled that whether misconduct of a civil servant occurs on or off duty, if it be such as to constitute just cause for disciplinary action and does in fact impair the efficient operation of the service and there is substantial relationship between the conduct in question and the efficient performance of the employee’s duties, the disciplinary action is justified and must be sustained by the Commission and the Court. Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5.
Equally without merit is the contention no disciplinary action may be taken against appellant pending her acquittal or conviction upon the criminal charges filed against her as a result of the assault charged and that in the event of acquittal thereon she may not be subjected to disciplinary action. In this connection, it appears elementary that the disciplinary power of an appointing authority cannot be conditioned upon the outcome of pending criminal charges against a civil servant. While certain conduct, reprehensible though it may be, may not constitute ground for criminal prosecution because such conduct has not been specifically reprobated by legislative act, nevertheless, this same conduct, depending, of course, upon the circumstances in each case, may constitute justifiable ground for disciplinary action or dismissal of an employee. Moreover the degree of proof required to sustain conviction of crime is vastly greater than the degree of proof necessary to support the Commission’s finding of fact in an appeal by a disciplined employee. In the former instance, the accused may not be found guilty unless proved so beyond a reasonable doubt, whereas, in the latter case, by constitutional mandate, the Commission’s findings of fact are binding upon the court if supported by evidence of record. Quite conceivably there will be instances wherein the evidence regarding wrongdoing may be insufficient to support conviction in the criminal courts and yet be adequate to support the Commission’s finding as a fact that the employee was guilty of wrongdoing grievous enough to support dismissal or other disciplinary ac *521 tion. Plaintiff’s prior acquittal of the assault charge would not serve to bar disciplinary action by her appointing authority provided, of course, the misconduct charged constitutes just charge for the discipline imposed.
Next appellant contends there is insufficient evidence of record to sustain the charges lodged against her. Stated otherwise, she maintains there is no proof of the alleged misconduct appearing in the record, because the testimony of the chief witness, Octave Rainey, III, is not corroborated and his testimony is unworthy of belief. In this regard the record shows that Octave Rainey, III, a fourteen year old negro youth, testified in substance that on the afternoon of Saturday, May 13, 1961, at approximately Four P.M., he was in the backyard of his home when plaintiff, a total stranger, entered the yard through a back door or gate and proceeded into the residence. Rainey followed plaintiff into the house and asked plaintiff what she wanted, to which plaintiff replied by asking Rainey if his mother were at home. Upon being advised Mrs. Rainey was out, plaintiff then requested permission to use the bathroom. Rainey told plaintiff the bathroom was just around the hall corner at which time appellant asked him to show her the bathroom. Rainey stated he then pointed around the corner and plaintiff again asked him to show her the bathroom at which juncture he walked past appellant to lead her to the bathroom and while his back was turned, appellant struck him in the back of the head with some instrument. He immediately turned and observed plaintiff was preparing to strike him again with an upraised hatchet. Pie grabbed plaintiff by the arm and in the ensuing scuffle, appellant fell to the floor. Rainey then fled the house yelling for the police. Pie then went to a cleaning establishment approximately one block distant and returned to his home with the proprietor and two other individuals. When the lad reached his residence, plaintiff came out carrying a brown paper bag and upon observing the approach of the boy and the other parties, plaintiff started to flee but was apprehended by a carpenter working in the neighborhood. The police were then summoned to the scene.
Ronald John Ensminger, a member of the New Orleans City Police Department, testified he was called to the scene and arrested appellant who related that she did not recall any of the events which transpired as she had “blacked out”. Officer Ensminger further testified appellant told him she had come to that particular address to talk with a woman who taught at the same school as appellant’s husband and whom appellant suspected of having an affair with appellant’s spouse. He examined the contents of the paper bag plaintiff was carrying and found that it contained a hatchet and an ice pick.
Lillie Nairne, appellant’s immediate superior, testified she learned of the incident on the morning of Monday, May 15, 1961, by reading an account of the assault in the local newspaper and also by means of a telephone call. She interviewed appellant on Tuesday, May 16, 1961, at approximately 11:00 A.M., at which time appellant admitted having assaulted the Rainey lad. On the occasion of this interview, appellant was advised she would be let go because the nature of her work required a person whose behavior was predictable, one whose judgment could be relied upon and one capable of advising, aiding and protecting families, including mothers and children. Miss Nairne testified she had contacted the State Commissioner of Welfare and obtained permission to suspend plaintiff pending an investigation of the criminal charges lodged against appellant as a result of the incident in question. After completing the investigation, Miss Nairne recommended plaintiff's termination. Tersely stated, her opinion regarding appellant’s conduct was that it did not measure up to the standards required by the Department of a Welfare Visitor. In this regard the record contains certain documents (in *522 troduced without objection from counsel for appellant) which prescribe the standards of conduct applicable to such employees. It is clear from the record, appellant’s actions patently contravened the code of conduct rtherein set forth. While counsel for appellant maintains the Commission erred in -permitting introduction of the documents mentioned as it enlarged the scope of the • charges • against appellant, the contention -is without merit in view of the failure of .counsel to enter timely and proper objection to the evidence in question. Bonnette et al. v. Louisiana State Penitentiary, La.App., 148 So.2d 92. Moreover, it is now well settled that to constitute ground for disciplinary action an employee’s conduct need not necessarily violate a promulgated rule or regulation of the employer, it suffices if the conduct is tantamount to a violation of law or moral turpitude of such gravity as to impair the efficient operation of the particular service involved. Miller v. State Department of Health, La.App., 135 So.2d 570; Bonnette et al. v. Louisiana State Penitentiary, La.App., 148 So.2d 92. We unhesitatingly conclude, therefore, the record contains ample evidence to support the findings of facts reached by the Commission in the case at bar. Assuming, arguendo, the now contested documents to have been improperly admitted in evidence, it could have no effect on the outcome of this matter. Even without such documentary evidence to show the standards of conduct required of a Welfare Visitor, the court must nevertheless sustain the Commission’s conclusion that such conduct by an employee impairs the efficient operation of the Welfare Department inasmuch as such employees must, by the very nature of their duties in calling upon and assisting the unfortunate, the sick, the aged and the infirm, be persons of predictable behavior whose judgment can be relied upon under all circumstances and who must also be of a kind, compassionate and understanding nature and disposition rather than prone to unpredictáble outbursts of uncontrolled temper and arts of violence.
Assuming arguendo, corroboration of the testimony of Rainey is required to sustain appellant’s dismissal, we believe the foregoing testimony of plaintiffs immediate superior and Officer Ensminger disposes of the contention it is without verification in the record. We believe, however, learned counsel for appellant mistaken in the contention the Commission would have fallen into error in accepting the uncorroborated testimony of Rainey as supportive of the charges against appellant. It is now well established that the burden of proof in' an appeal before the Commission is upon the employee. Article 14, Section 15(0) (1), Louisiana Constitution; Konen v. New Orleans Police Department, 226 La. 739, 77 So.2d 24. It is equally well settled that the findings of the Commission on matters of fact are binding upon the Court which must accept the Commission’s factual determinations as true when they are supported by substantial evidence of record. Louisiana Constitution, Article 14, Section 15(O) (1); Cottingham v. Department of Revenue, 232 La. 546, 94 So.2d 662; Villemarette v. Department of Public Safety, La.App., 129 So.2d 835. The burden incumbent upon the appellant employee arises when there is introduced before the Commission some evidence to substantiate the charges relied upon by the employer. Foster v. Department of Public Welfare, La.App., 144 So.2d 271. Certiorari denied November 8, 1962.
The Commission chose to believe the narration of events related by Rainey. Our own independent perusal of the record convinces us there is nothing in the record to impeach his testimony or cast any doubt whatsoever upon his credibility. The lad told a forthright story without any apparent attempt at embellishment or distortion. Despite rigorous cross-examination by capable counsel for appellant, the boy, in our judgment, steadfastly adhered to the testimony given on direct examination. We find absolutely nothing in the record to discredit him and hold that his testimony, *523 standing alone, was substantial evidence to support the Commission’s factual findings.
Accordingly, the judgment of the Commission herein appealed is affirmed.
Affirmed.